UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL 38-D, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3: 11-20-DCR |
| V. | ) ) | |
| BUFFALO TRACE DISTILLERY, INC., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment. [Record Nos. 14, 15] Plaintiff United Food and Commercial Workers International Union, Local 38-D ("UFCW" or "the Union") seeks an order requiring Defendant Buffalo Trace Distillery, Inc. ("Buffalo Trace" or "the Company") to arbitrate two grievances in accordance with the collective bargaining agreement ("CBA") between the parties. However, the Company maintains that the grievances are not arbitrable. For the reasons explained below, the Court will grant the Union's motion and deny the Company's motion. In addition, the Company's pending motion to strike [Record No. 22] will be denied as moot.

**I.**

The grievances at issue involve the Company's use of a storage facility in Frankfort, Kentucky. In the first grievance, dated September 10, 2010, Union forklift drivers complained of:

> Buffalo Trace management allowing non-union employees to unload, store and reload case goods prior to shipments. This is work normally performed by Local 38D union employees. The product is being trucked to a warehouse for storage prior [to] shipping, approximately 4-5 miles from other storage warehouses because of shortage of space.

[Record No. 1-3, p. 2] The second grievance was filed three days later by Union truck drivers and related to "[h]auling bottled product for storage at warehouse in Frankfort, KY." [Record No. 1-4, p. 2] According to the grievance, Union truck drivers "have hauled case goods, empty glass, etc. to similar locations in the past with Over the Road Truck Drivers (CDL)."

The Union requested arbitration of the grievances under the CBA after earlier attempts at resolution were unsuccessful. The Company refused to arbitrate, however, maintaining that the subject of the grievances was "clearly not a matter covered by" the CBA. [Record No. 1-5, p. 2] The Union then filed this action to compel arbitration pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. [Record No. 1, p. 1 ¶ 1]

**II.**

The parties agree that for purposes of summary judgment, the sole issue before the Court is whether the grievances are arbitrable. [*See* Record No. 14-1, p. 2; Record No. 15-1, p. 2] As explained below, this question can be resolved without consideration of the documents that are the subject of the Company's motion to strike.

The Sixth Circuit recognizes four "well-established principles" to be applied when determining whether a grievance is arbitrable:

> (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for

> judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 904 (6th Cir. 2010) (internal quotation marks omitted). The Supreme Court has cautioned that the presumption of arbitrability should be applied "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2858-59 (2010) (quoting *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 651 (1986)).

Applying these principles to the instant case, the Court must determine whether the parties agreed to arbitrate grievances like the ones at issue here. If the CBA is unclear, the Court will presume that arbitration is appropriate unless the Company can show "with positive assurance" that the arbitration provision cannot be read to cover those grievances. *Kroger*, 617 F.3d at 904; *see Granite Rock Co.*, 130 S. Ct. at 2859 (courts should "order[] arbitration only where the presumption is not rebutted").

The CBA's arbitration clause is found in Article 24, which sets out a procedure for resolution of grievances "arising from the administration of a provision of" the agreement.[1] [Record No. 1-2, p. 20] In its Complaint, the Union alleged that the grievances asserted

---

[1] At Step 5 of the procedure, Union members may request arbitration of unresolved grievances. [*See* Record No. 1-2, p. 20]

violations of at least three CBA provisions: Article 1 (Recognition), Article 26 (Contracting Out), and Article 36 (Temporary Employees). [Record No. 1, p. 3 ¶ 12]

### A. Article 1

Article 1 provides, in relevant part:

> The Company recognizes the Union as the sole and exclusive collective bargaining representative for the Company's employees, set forth herein at its Frankfort, Kentucky, location and agrees to negotiate with the Union on behalf of such employees. . . .
>
> 1. The term "employees," as used in this Agreement, shall not include non-working foremen, office employees, plant guards, supervisors, chemists, and all other employees possessed with full authority to hire and discharge, or other direct representatives of management, and further excluding all employees covered by an agreement between the Company and any other union.
>
> 2. Persons excluded above shall not perform work normally assigned to employees in the bargaining unit . . . .[2]

[Record No. 1-2, p. 5]

The bulk of the parties' argument concerns whether the storage facility is part of the Company's "Frankfort, Kentucky, location" and whether warehouse work constitutes "work normally assigned to" Union employees. [*Id.*] The Company asserts that Article 1 does not apply because the term "Frankfort, Kentucky, location" refers only to the distillery at 113 Great Buffalo Trace, whereas the grievances relate to off-site work. [*See* Record No. 14-1, pp. 10-12; Record No. 16, pp. 6-7; Record No. 23-1, pp. 2-4] Meanwhile, the Union attempts to establish that the storage facility is part of the Company's "Frankfort, Kentucky, location" based on the

---

[2] This provision is subject to exceptions that are not relevant here.

distillery's proximity to the warehouse and the distinction between "in-bond" product and "tax-paid" product. [*See* Record No. 20, pp. 11-12] In support of its position, the Union offers the two documents that the Company seeks to have stricken from the record: a joint declaration by Union President James T. Hughes and Secretary-Treasurer William Ward II and a map, printed from Google, meant to illustrate the distance between the distillery and the warehouse. [Record Nos. 20-1, 20-2]

The Court finds it unnecessary to address these issues in light of the statement by Human Resources Director Kristy Rowan that "[n]one of the warehouse or transport personnel involved in the transporting or any activity at [the storage facility] are employees of Buffalo Trace. They are all third parties." [Record No. 14-2, p. 2 ¶ 5] Article 1 provides that work normally assigned to Union employees shall not be performed by "[p]ersons excluded" from the definition of "employees." [Record No. 1-2, p. 5] As stated previously, those excluded persons are "non-working foremen, office employees, plant guards, supervisors, chemists, and all *other employees* possessed with full authority to hire and discharge, or other direct representatives of management, and further excluding all *employees* covered by an agreement between the Company and any other union." [*Id.* (emphases added)]

By its terms, then, Article 1 prevents Union work from being assigned to certain non-Union *employees* of the Company. It does not address work done by third parties, *i.e.*, persons who are not employed by the Company. [*See id.*] The Union's contention that Article 1 prohibits the Company from allowing such work to be performed by *anyone* outside the Union is not supported by the language of the article itself. [*See* Record No. 20, p. 9 (arguing that

regardless of what entity employed the warehouse and transport workers, "the Company still assigned bargaining unit work to persons not in the bargaining unit in violation of the CBA")]

In short, the Company has shown that the CBA's arbitration clause cannot be interpreted to cover the parties' dispute under Article 1. Although each grievance, on its face, appears to assert a violation of the "work normally assigned to" provision, Rowan's declaration establishes that the subject matter of the grievances falls outside Article 1. The Union has not presented any evidence that the warehouse and transport workers are in fact employees, as Article 1 requires. Thus, the grievances cannot be said to "aris[e] from the administration of" Article 1 and are not subject to arbitration on that ground. [Record No. 1-2, p. 20]

### B. Article 26

With respect to "contracting out," Article 26 provides: "[w]hen maintenance and repair work that the employees in the bargaining unit normally perform exceeds the capacity or skills of the normal work force, or becomes uneconomical, the Company may utilize outside contractors. However, the Company will not utilize the economic provision without first consulting the Union." [*Id.*, p. 21] The Union reads this language as "limit[ing] the circumstances under which the Company may contract out work"; in the Union's view, Article 26 "prohibits the Company from utilizing outside contractors for bargaining unit work except in the case of maintenance and repair work that exceeds the capacity or skills of the normal work force or becomes uneconomical — and only then upon first consulting with the Union." [Record No. 20, p. 8]

The Company denies that Article 26 has any application here, contending that it pertains only to maintenance and repair work and does not restrict the contracting out of any other types of work. [Record No. 1-2, p. 21; *see* Record No. 14-1, p. 12; Record No. 23-1, p. 6] Because the CBA is the sole agreement between the parties, the Company argues, "Articles 26 and 36 cannot be read as an across-the-board prohibition on any and all activities except those mentioned in the article, and then, with the further limitations set forth in the article. Rather, Articles 26 and 36 impose only the specific limitations included in the articles." [Record No. 23-1, p. 6]

Nevertheless, the Court finds the Union's reading of Article 26 to be at least as plausible as the Company's contention. It is a fundamental canon of construction that the expression of one thing implies the exclusion of another (*expressio unius est exclusio alterius*). Under this maxim, the parties' specific provision for the contracting out of maintenance and repair work indicates that contracting out is not permitted for any other type of work.[3] Further, the Company has provided no evidence from which the Court could conclude "with positive assurance" that the use of third parties does not constitute contracting out under Article 26.[4] *Kroger*, 617 F.3d at 904. Because the CBA is ambiguous and the Company has not rebutted the presumption of

---

[3] Both the heading of Article 26 and the language of the article itself also support the Union's interpretation. The broad heading, "Contracting Out," suggests that the article defines the particular circumstances under which the Company may contract out work. [Record No. 1-2, p. 21] And if the Company were otherwise free to contract out non-maintenance and repair work as it claims, the Court would expect to find more restrictive language in Article 26 — for example: "Maintenance and repair work normally performed by UFCW employees may *only* be contracted out when it (1) exceeds the capacity or skills of the normal work force or (2) becomes uneconomical."

[4] Rowan's declaration merely asserts that "Article 26 is clearly not applicable" because "this is not a contracting out of maintenance or repair work situation." [Record No. 14-2, p. 4]

arbitrability, the Court will order arbitration as to the alleged violation of Article 26. *See Granite Rock Co.*, 130 S. Ct. at 2859; *Kroger*, 617 F.3d at 904.

### C. Article 36

Finally, Article 36 allows the Company to utilize "temporary employees" under certain circumstances. [Record No. 1-2, p. 25] As explained above, however, the record contains undisputed evidence that the workers in question are not employed by the Company. [*See* Record No. 14-2, p. 2 ¶ 5; *id.*, p. 4 ¶ 9 ("The Company has not hired or placed any employees at the warehouse on Fortune Drive.")] The grievances thus do not "aris[e] from the administration of" Article 36. [Record No. 1-2, p. 20]

### III.

The Union's grievances do not arise out of the administration of Article 1 or 36 of the CBA. They do, however, assert violations of Article 26. As a result, they are subject to arbitration. Accordingly, it is hereby

**ORDERED** as follows:

(1) Defendant Buffalo Trace Distillery, Inc.'s Motion for Summary Judgment [Record No. 14] is **DENIED**.

(2) The Motion for Summary Judgment by Plaintiff United Food and Commercial Workers International Union, Local 38-D [Record No. 15] is **GRANTED**. The parties are hereby compelled to submit the grievances to arbitration in accordance with the procedures set forth in the parties' collective bargaining agreement to the extent the grievances assert violations of Article 26 of that agreement.

(3) Defendant Buffalo Trace Distillery, Inc.'s Motion to Strike [Record No. 22] is **DENIED** as moot.

(4) All issues properly raised herein having been resolved, this matter is **DISMISSED** and **STRICKEN** from the docket.

This 30th day of December, 2011.

Signed By:
*Danny C. Reeves* DCR
United States District Judge